UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLTON JAMES ROOD,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS, STILES, PHILIPS, DUNLIP, FRENOSCO, JOHN DOE, STRH ADMINISTRATOR/WARDEN, and JANE DOE,<br><br>Defendants. | Case No. 1:19-cv-01517-NONE-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS NON-COGNIZABLE CLAIMS AND DEFENDANTS[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No. 18)<br><br>ORDER DIRECTING CLERK OF COURT TO AMEND DOCKET |

This matter was reassigned to the undersigned on November 17, 2020. (Doc. No. 24). Plaintiff Colton James Rood, a state prisoner proceeding *pro se*, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983 and is proceeding on his First Amended Complaint. (Doc. No. 18). After screening, Plaintiff filed a notice stating that he wished to stand on his First Amended Complaint subject to the undersigned's recommendation that certain claims and defendants be dismissed. (Doc. No. 21). For the reasons stated below, the undersigned recommends that Plaintiff be given leave to proceed with his cognizable claims against the following defendants: John Doe, Philips, Jane Doe, and STRH Administrator/Warden, and that all other non-cognizable claims and defendants be dismissed.

---

[1] The undersigned submits these factual findings and recommendations to the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2019).

# BACKGROUND

### A. Procedural Posture

Plaintiff filed his initial complaint on October 11, 2019. (Doc. No. 1). The then-assigned magistrate judge granted Plaintiff's motion for leave to proceed *in forma pauperis* and screened Plaintiff's initial complaint, found it failed to state any cognizable claims for relief, and granted Plaintiff leave to file a first amended complaint. (Doc. Nos. 15, 16). Plaintiff filed a First Amended Complaint. (Doc. No. 18, "FAC"). On July 6, 2020, the magistrate judge then screened the FAC, found it stated cognizable Eighth Amendment claims for failure to protect and intervene against defendants John Doe and Philips, and a medical deliberate indifference claim against defendant Philips, but no other claims. (Doc. No. 20 at 6). Plaintiff was directed to choose between (1) proceeding only on the claims found cognizable by the magistrate judge and voluntarily dismiss all other defendants, (2) filing a second amended complaint to add facts in an attempt to make out additional claims or claims against additional defendants, or (3) standing on his FAC subject to dismissal of claims and defendants consistent with the screening order. (*Id.*). Plaintiff notified the Court he wished to proceed on his FAC. (Doc. No. 21). In his notice, Plaintiff requested the Court to reconsider its findings in the second screening order, arguing that his claims against all defendants sufficiently state a claim for relief. (*Id.*). The undersigned re-reviewed the FAC and finds it states additional claims against Jane Doe and the STRH Administrator/Warden, in addition to the other claims previously sanctioned by the former magistrate judge.

### B. Summary of FAC

Plaintiff is currently incarcerated at High Desert State Prison. (Doc. No. 25). The FAC alleges constitutional violations arising from Plaintiff's confinement at Pleasant Valley State Prison. (Doc. No. 18). The FAC identifies the following as defendants: "Department of Corrections" ("CDCR"); correctional officer LT Stiles, correctional officer Philips; correctional officer Dunlip; correctional officer Frenosco; correctional officer John Doe; the STRH Administrator/Warden; and mental health group facilitator Jane Doe. The claims in the FAC stem from an inmate group session where inmate Mejia attacked Plaintiff with a razor blade while

1  Plaintiff was securely chained to a chair.  According to the facts alleged in the FAC, defendants
2  John Doe, Philips, and Jane Doe failed to intervene prior to or during the attack.  The FAC also
3  alleges that CDCR does not provide adequate training to its staff to prevent hostile situations and
4  does not train its staff in proper search protocols.  (*Id*. at 4).  According to the FAC, during the
5  group meeting a week prior to the incident, Jane Doe encouraged other inmates to attack Plaintiff
6  by telling them Plaintiff had been accused of indecent exposure, which resulted in the sanction of
7  the "good movies" being removed from the group.  (*Id*.).

8  Plaintiff states John Doe and Philips are both large in size and that Mejia is small in
9  stature.  (*Id.* at 7).  Philips searched Mejia prior to the group but did not use a metal detector on
10 him or conduct a strip search.  (*Id*. at 8).  Plaintiff states that the group was held in a controlled
11 setting where inmates were chained with ankle and waist restraints in an effort to keep inmates
12 from having contact with each other.  (*Id*. at 6).

13 Plaintiff claims John Doe caused a hostile situation by asking if anyone needed to leave
14 from the group session, allowing inmate Mejia to get out of his chair, and expecting a violent
15 situation to occur.  (*Id*.).  John Doe and Philips failed to stop Mejia from hopping towards
16 Plaintiff and they did not call out a command for Mejia to stop coming towards Plaintiff.  (*Id*.).
17 John Doe and Philips took no precautionary measures to prevent Mejia from making harmful
18 contact with Plaintiff.  (*Id*.).  Although John Doe saw Mejia had a razor blade, he failed to press
19 his alarm button.  (*Id*.).  Mejia then used the razor blade to attack Plaintiff.  (*Id*. at 7).  At that
20 point, John Doe said "stop or I'll press the [alarm] button."  (*Id*.).  But John Doe, Philips, and
21 Jane Doe did not press the alarm button.  (*Id*.).  Plaintiff claims that John Doe and Philips could
22 have used pepper spray on Mejia, struck Mejia with a baton, or kicked Mejia to stop the attack,
23 but they failed to take any action.  (*Id*.).  Plaintiff states that it was apparent to John Doe and
24 Philips that Mejia was attacking Plaintiff because blood was "spraying everywhere."  (*Id*.).
25 Plaintiff attempted to bite Mejia's fingers in order to stop the attack.  (*Id*.).

26 Two minutes after the incident, Stiles came into the room and asked, "Why is [Plaintiff]
27 still chained?"  (*Id*. at 9).  A medical gurney had been waiting for Plaintiff for about one minute
28 after the incident.  (*Id*.).  Philips did not immediately unbolt Plaintiff from his chair and Plaintiff

3

lost consciousness and almost bled to death while he was waiting for medical attention. (*Id*.). Stiles unbolted Plaintiff from his chair. (*Id*.).

Plaintiff claims that the STRH Administrator/Warden and Stiles mistakenly allowed Mejia and Plaintiff to be in the same group and did not ensure that the staff used proper safety protocols, such as searching inmates with metal detectors. (*Id*. at 8). Plaintiff states that Dunlip, Frenosco, Stiles, and Philips should use proper search protocols, including using metal detectors to search the inmates in the group. (*Id*.).

As relief, Plaintiff seeks a court order directing CDCR to properly train their staff to ensure a similar situation does not happen again. (*Id*. at 9). Plaintiff also seeks $23,000,000 in compensatory damages each from Philips, John Doe, and Jane Doe; an additional $125,000 from each Defendant; a declaration that Plaintiff's constitutional rights were violated; and costs of this suit. (*Id.*).

## APPLICABLE LAW

### A. Screening Requirements and Federal Rule of Civil Procedure 8

Because Plaintiff commenced this action while he was incarcerated, he is subject to the Prison Litigation Reform Act ("PLRA"), that requires, *inter alia*, that the court screen a complaint that seeks relief against a governmental entity, its officers, or its employees under 28 U.S.C. § 1915A before directing service upon any defendant. This requires the court to identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *see also* 28 U.S.C. § 1915(e)(2)(b)(ii) (governing actions proceeding *in forma pauperis*).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Franklin v. Murphy*, 745 F.2d 1221, 1227-28 (9th Cir. 1984). Claims are frivolous where they are based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A claim fails to state a claim upon which relief may be granted if it appears that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69,

73 (1984); *Palmer v. Roosevelt Lake Log Owners Ass'n, Inc.*, 651 F.2d 1289, 1294 (9th Cir. 1981). Examples of immunity that would preclude relief during screening, include, but are not limited to, quasi-judicial immunity, sovereign immunity, or qualified immunity. Additionally, a prisoner plaintiff may not recover monetary damages absent a showing of physical injury. *See* 42 U.S.C. § 1997e(e). In other words, to recover monetary damages, a plaintiff must allege physical injury that need not be significant but must be more than *de minimis*, except when involving First Amendment claims. *Oliver v. Keller*, 289 F.3d 623, 626-28 (9th Cir. 2002) (surveying other circuit courts for the first time to address injury requirement for monetary damages, and agreeing with the Second, Fifth, and Eleventh Circuits on PLRA's injury requirement).

At the screening stage, the court accepts the factual allegations in the complaint as true, *Hosp. Bldg. Co. v. Rex Hosp. Tr.,* 425 U.S. 738, 740 (1976), construes the complaint in the light most favorable to the plaintiff, and resolves all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003). The court is not required to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989); *Franklin*, 745 F.2d at 1227.

The Federal Rules of Civil Procedure require only that the complaint contain "a short and plain statement of the claim showing the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Nonetheless, a claim must be facially plausible to survive screening, which requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required

//

to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Finally, the Rules permit a complaint to include all *related claims* against a party and permit joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of transactions or occurrences" where "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added). But the Rules do not permit conglomeration of unrelated claims against unrelated defendants in a single lawsuit. Unrelated claims must be filed in separate lawsuits.

If an otherwise deficient pleading could be cured by the allegation of other facts, the *pro se* litigant is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). However, it is not the role of the Court to advise a *pro se* litigant on how to cure the defects. Such advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13.

**B. Section 1983**

Section 1983 allows a private citizen to sue for the deprivation of a right secured by federal law. *See* 42 U.S.C. § 1983; *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017). To state a claim under § 1983, a plaintiff must show that a defendant acting under color of state law caused an alleged deprivation of a right secured by federal law. *See* 42 U.S.C. § 1983; *Soo Park v. Thompson*, 851 F.3d 910, 921 (9th Cir. 2017). The plaintiff can satisfy the causation requirement by showing either: (1) the defendant's "personal involvement" in the alleged deprivation or (2) a "sufficient causal connection" between the defendant's conduct as a supervisor and the alleged deprivation. *See King v. Cty. of Los Angeles*, 885 F.3d 548, 559 (9th Cir. 2018).

The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, (1978); *Rizzo v. Goode*, 423 U.S. 362, (1976). The Ninth

Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

**ANALYSIS**

**A. Defendant CDCR**

As an initial matter, the FAC again names CDCR as a defendant, even though the Court has explained to Plaintiff (*see* Doc. No. 16 at 6; Doc. No. 20 at 3) that he cannot sue this state agency under § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017) (finding that state agencies are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court). Thus, the undersigned recommends CDCR be dismissed as a named defendant.

**B. Defendants Stiles, Dunlip, and Frenosco**

The undersigned finds the FAC fails to state a claim against Stiles, Dunlop, and Frenosco. The FAC contains no allegations from which the Court can discern how these defendants' actions caused the harm alleged, as required by § 1983. The FAC does not attribute any specific action to Dunlip and Frenosco which caused a deprivation of Plaintiff's constitutional rights. The allegations against Stiles are that (1) he arrived to take Plaintiff for medical care; (2) he admonished Philips because Plaintiff was still in restraints; and (3) he removed Plaintiff's restraints so he could be removed from the chair and placed on the gurney. These allegations indicate Stiles took steps to quickly help Plaintiff. None of these allegations amount to a violation of Plaintiff's constitutional rights. The only other allegation against Stiles is that he, along with the STRH Administrator/Warden "oversee classification" and Plaintiff and Mejia should not have been placed in the same group. (*See* Doc. No. 18 at 8). The FAC fails to include any facts as to why Plaintiff and Mejia should not have been permitted to be together in the same group. Nor does it allege that either Stiles or the STRH Administrator/Warden had knowledge of any facts as to why Plaintiff and Mejia should not have been placed together in the same group. Thus, this allegation is vague and insufficient to attribute any liability to Stiles for placing

Plaintiff in the same group as Mejia. The undersigned recommends that Stiles, Dunlip, and Frenosco be dismissed as defendants from this action.

### C. Defendants John Doe, Philips, and Jane Doe - Failure to Protect or Intervene

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* at 834 (internal quotation marks and citations omitted). "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*

Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." *Id.* (internal quotation marks and citations omitted). The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Then the official must fail to take reasonable measures to abate the substantial risk of serious harm. *Id.* at 847. Mere negligent failure to protect an inmate from harm is not actionable under § 1983. *Id.* at 835.

Relatedly, a prisoner's rights can be violated by a prison official's deliberate indifference in failing to intervene. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). However, an officer can only be held liable for failing to intervene if he had a realistic opportunity to intercede and failed to do so. *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000).

Here, the FAC sufficiently alleges facts that correctional officers Philips and John Doe and mental health facilitator Jane Doe were aware of facts regarding Mejia's imminent attack, failed to protect Plaintiff from the attack, and then failed to intervene at any point during the attack. Philips was responsible for searching Mejia before the group session and failed to either use a metal detector or conduct a strip search, either of which would have likely uncovered the

1   metal razor blade that was used to attack Plaintiff.  Plaintiff's description of the restraints used on
2   the inmates and of the circumstances under which he was attacked also suggest that both Philips
3   and John Doe had realistic opportunities to intercede, including by physically restraining and/or
4   pepper spraying inmate Mejia.  Further, the FAC contains allegations that Jane Doe, the mental
5   health group facilitator, made statements that Plaintiff was responsible for the inmates' loss of
6   good movies, encouraged other inmates to attack Plaintiff, was in the room when Plaintiff was
7   attacked and failed to trigger the alarm.  The undersigned finds the FAC provides facts that show
8   each officer was aware of the substantial risk of harm to Plaintiff but failed to protect him.  The
9   undersigned recommends that the FAC be permitted to proceed on Plaintiff's Eighth Amendment
10  claims against Defendants John Doe, Philips, and Jane Doe for failure to protect and/or intervene.

### D. Defendant Philips - Medical Deliberate Indifference

12  The FAC appears to raise a claim for medical deliberate indifference against Philips
13  because Philips did not immediately remove Plaintiff's restraints after the attack.  Plaintiff was
14  still fastened to his chair when Stiles came to retrieve Plaintiff.  Because of this delay, Plaintiff
15  lost blood unnecessarily and lost consciousness.

16  There is a two-part test for deliberate indifference: "First, the plaintiff must show a serious
17  medical need by demonstrating that failure to treat [his] condition could result in further
18  significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must
19  show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680
20  F.3d 1113, 1122 (9th Cir. 2012) (internal quotation marks and citation omitted).  "This second
21  prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a)
22  a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm
23  caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal
24  citations omitted).

25  The FAC has alleged enough facts to state a claim for medical deliberate indifference
26  against Defendant Philips.  Plaintiff had an obvious medical need, as Defendant Philips had just
27  witnessed Plaintiff getting attacked with a razor blade.  Delaying Plaintiff's treatment by leaving
28  him chained to the chair while he bled heavily enough to lose consciousness is sufficient inaction

9

on the part of Philips to state a claim against him for deliberate indifference.  The undersigned recommends that the Eight Amendment claim for deliberate indifference in the FAC proceed against Defendant Philips.

### E. Defendant Warden

The theory of *respondeat superior* does not support a finding of liability against a supervisor for the actions of his subordinates under 42 U.S.C. § 1983.  *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (citing *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989)). Supervisory liability only attaches under § 1983 when: (1) a supervisor personally is involved in the constitutional deprivation, or (2) there is a sufficient causal connection between some wrongful conduct by the supervisor and the constitutional violation.  *Id*.

A supervisor can be liable under a "failure to train" theory in limited circumstances.  *See City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989).  These circumstances exist "where the failure to train amounts to deliberate indifference to the rights of persons with whom the [government officers] come into contact." *Id*. at 388.  "[F]or liability to attach . . . [,] the identified deficiency in [the] training program must be closely related to the ultimate injury.  Thus . . . , [a plaintiff] must still prove that the deficiency in training actually caused the . . . officers' indifference" to the plaintiff's constitutional rights.  *Id.* at 391.  In order to state a claim for failure to train, a plaintiff must allege that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers [] can reasonably be said to have been deliberately indifferent to the need."  *Id.* at 390.

Here, Plaintiff claims that there was improper training of staff and a failure to ensure implementation of safety search and response protocols at the prison.  (Doc. No. 18 at 4). Specifically, Plaintiff states training is delivered to staff in "packet form" and contends the training instead should be "hands-on" and held every twelve months.  (*Id*.).  Plaintiff avers that the prison does not maintain and update staff training.  (*Id*. at 8).  In support of his failure to train argument, Plaintiff faults the Warden for failing to ensure that staff search inmates properly, both

by physically searching them and using metal detectors or wands and for failing to ensure that staff know how to use pepper spray and activate the alarm button in group sessions. (*Id*.).

Accepting the allegations in the FAC as true, the STRH Administrator/Warden failed to train staff on the proper use detecting hidden weapons on inmates or the use of metal detectors and wands to search prisoners for weapons and failed to train staff to use pepper spray and activate alarm buttons in situations of inmate-on-inmate attacks. This deficiency in training is closely related to Plaintiff's injury. If the prison staff had been properly trained, they would have detected Mejia's razor blade prior to the start of the group session. And even if the staff did not uncover the razor blade prior to the session, they could have de-escalated the situation quickly through the use of pepper spray and the alarm button, had they been properly trained. The undersigned finds the FAC states a cognizable claim against Defendant STRH Administrator/Warden to the extent he failed to train his staff on the proper search for weapons, and the use of metal detectors, wands, pepper spray, and alarm buttons.

**ORDER AND RECOMMENDATIONS**

Accordingly, it is **ORDERED**:

The Clerk of Court shall correct the caption of the docket to reflect all defendants named in the First Amended Complaint (Doc. No. 18) to include: Stiles, Philips, Dunlip, Frenosco, John Doe, STRH Administrator/Warden and Jane Doe.

It is further **RECOMMENDED**:

1. Plaintiff's first amended complaint proceed only on violations of Plaintiff's Eighth Amendment rights: (a) against Defendants John Doe, Philips, and Jane Doe for failure to protect and/or intervene; (b) against Defendant Philips for medical deliberate indifference, and (c) against Defendant STRH Administrator/Warden for failure to train. (Doc. No. 18).

2. All other claims and defendants be dismissed from this action based on Plaintiff's failure to state claims upon which relief may be granted.

11

**NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:  December 21, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE