UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLTON JAMES ROOD,<br><br>    Plaintiff,<br><br>    v.<br><br>N. KEOVILAY-SEE and SCOTT FRAUENHEIM,<br><br>    Defendants. | Case No. 1:19-cv-01517-JLT-HBK (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No. 90) |

Pending before the Court is Defendants N. Keovilay-See and Scott Frauenheim's motion for summary judgment filed April 8, 2024. (Doc. No. 90, "MSJ"). Plaintiff did not file any opposition. (*See* docket). For the reasons discussed below, the undersigned recommends the district court grant Defendants' Motion because there is no genuine dispute of material facts as to whether Defendant Keovilay-See failed to protect Plaintiff from a serious threat to his safety in violation of the Eighth Amendment and whether Defendant Frauenheim failed to train his subordinates in violation of Plaintiff's Eighth Amendment right.

**I.     BACKGROUND**

**A. Procedural History**

Plaintiff Colton James Rood is a former state prisoner proceeding pro se and *in forma*

*pauperis* in his civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds on his First Amended Complaint.  (Doc. No. 18, "FAC").  On December 21, 2021, the undersigned filed a Findings and Recommendations ("F&R") that Plaintiff be permitted to proceed on his Eighth Amendment failure to protect claims against Defendants John Doe (later identified as Defendant Ron Carver), Jane Doe (later identified as Defendant N. Keovilay-See), and Philips, and an Eighth Amendment failure to train claim against Defendant STRH Administrator/Warden (later identified as Defendant Frauenheim), and that remaining claims and Defendants be dismissed.  (Doc. No. 27 at 11).  On May 16, 2022, the District Judge adopted the Findings and Recommendations and Defendants were served with the FAC.  (Doc. Nos. 33, 34, 35).  Defendants Philips and Carver were subsequently dismissed due to Plaintiff's failure to serve them under Rule 4(m).  (Doc. Nos. 62, 64).  On April 8, 2024, Defendants timely filed the instant motion for summary judgment (Doc. No. 90, "MSJ").  Plaintiff has not filed any opposition and the time to do so has elapsed.

### B. Defendants' MSJ

Supporting their MSJ, Defendants submit: (1) a memorandum of points and authorities (Doc. No. 90); (2) a statement of undisputed material facts (Doc No. 90-2); (3) the declaration of Nathan Guerrero, counsel of record for Defendants, (Doc. No. 90-3); (4) the declaration of Defendant N. Keovilay-See (Doc. No. 90-4); (4) the declaration of P. Williams (Doc. No. 90-5); and (6) the declaration of Scott Frauenheim (Doc. No. 90-6).

### C. Plaintiff's Opposition to Defendants' MSJ

Plaintiff filed no opposition to Defendant's MSJ.  (*See* docket).  Defendant served the MSJ on Plaintiff by First-Class Mail.  (Doc. No. 90-7 at 1-2).  The deadline for Plaintiff to file any opposition has long expired.  *See* Local Rule 230(l) (E.D. Cal. 2023).

## II.  APPLICABLE LAW

### A. Summary Judgment Standard

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate

when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. An issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the

3

nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002). A mere scintilla of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly supported summary judgment motion. *Anderson*, 477 U.S. at 252. However, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record" courts "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)). While prisoners are relieved from strict compliance, they still must "identify or submit some competent evidence" to support their claims. *Soto*, 882 F.3d at 872. Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment if based on personal knowledge, not merely belief, and it must set forth specific facts admissible in evidence. *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc); Fed. R. Civ. P. 56(e).

A complaint's conclusory allegations unsupported by specific facts, will not be sufficient to avoid summary judgment. *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001). Where, as here, a plaintiff fails to properly challenge the facts asserted by the defendant, the plaintiff may be deemed to have admitted the validity of those facts. *See* Fed. R. Civ. P. 56(e)(2). A court may grant an unopposed or inadequately opposed motion for summary judgment if the supporting papers are themselves sufficient to warrant granting the motion and do not on their face reveal a genuine issue of material fact. *See Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

The undersigned has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. The omission to an argument, document, paper, or objection is not to be construed that the undersigned did not consider the argument, document,

paper, or objection. Instead, the undersigned thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate for purposes of issuing these Findings and Recommendations.

### C. Eighth Amendment Failure to Protect

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits "cruel and unusual punishment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); U.S. Const. Amend. VIII. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). "The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation if prison officials know of and disregard a substantial risk of serious harm to the plaintiff." *Thomas v. Hernandez*, 2022 WL 1173339, at *4 (E.D. Cal. Apr. 20, 2022) (citing *Farmer*, 511 U.S. at 847, *Hearns v. Terhune*, 413 F.3d 1036 (9th Cir. 2005). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and, a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

To state a failure to protect claim, the prisoner must establish that the prison official was deliberately indifferent to a serious threat to the plaintiff's safety. *Id.* at 834 (citing *Helling v. McKinney*, 509 U.S. 35, 35 (1993)). Thus, a showing of deliberate indifference rests on facts clearly evincing "obduracy and wantonness, not inadvertence or error in good faith." *Whitley v. Albers,* 475 U.S. 312, 319 (1986). "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad v. Corr. Corp. of Am.,* 714 F.3d 1155, 1160 (9th Cir. 2013) (quoting *Farmer*, 511 U.S. at 847).

////

////

## III.  ANALYSIS

### A.  Allegations in Plaintiff's Operative Complaint

On October 24, 2017[1], Defendant Keovilay-See was facilitating an inmate group session attended by Plaintiff.  (Doc. No. 18 at 7-8).  At some point during the session, Inmate Mejia was released from his floor restraints by a correctional officer and attacked Plaintiff with a razor blade while Plaintiff was securely chained to a chair.  (*Id*. at 6-7).  According to the FAC, during the group meeting a week prior to the incident, Defendant Keovilay-See encouraged other inmates to attack Plaintiff by telling them Plaintiff had been accused of indecent exposure, which resulted in the sanction of the "good movies" being removed from the group.  (*Id*.).  Plaintiff claims that the Warden mistakenly allowed Mejia and Plaintiff to be in the same group and did not ensure that the staff used proper safety protocols, such as searching inmates with metal detectors.  (*Id*. at 8).

As relief, Plaintiff seeks a court order directing CDCR to properly train their staff to ensure a similar situation does not happen again. (*Id*. at 9).  Plaintiff also seeks $23,000,000 in compensatory damages from each Defendant; an additional $125,000 from each Defendant; a declaration that Plaintiff's constitutional rights were violated; and costs of this suit.  (*Id.*).

### C.  Plaintiff's Failure to Oppose the Motion

Plaintiff did not file an opposition to Defendant's MSJ, (*see* docket), nor did Plaintiff submit a separate statement of undisputed facts as required by Local Rule 260(a).  Where a party fails to oppose a motion for summary judgment, "Rule 56 is clear that although a court *may* deem facts admitted in the exercise of its discretion, it need not do so." *Warkentin v. Federated Life Ins. Co.*, 594 F. App'x 900, 902–03 (9th Cir. 2014) (alteration in original); *see* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment ("[T]he court may choose not to consider [a] fact as undisputed, particularly if the court knows of record materials that show grounds for genuine dispute").  A court, however, is not authorized to automatically grant summary judgment to a defendant solely because a plaintiff fails to oppose the motion. *Cristobal v. Siegel*, 26 F.3d 1488, 1494–95 & n.4 (9th Cir. 1994); *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003).

---

[1] The FAC expresses uncertainty as to whether the date was October 23 or 24, but records submitted to the Court, including the incident report, reflect that it occurred on October 24, 2017.  (*See* Doc. No. 90-4 at 5).

6

Where, as here, a party does not challenge the facts asserted by the moving party, the non-moving party may be deemed to have admitted the validity of those facts. *See* Fed. R. Civ. P. 56(e)(2). Further, Local Rule 230(l) provides that the "[f]ailure of the responding party to file an opposition or to file a statement of no opposition may be deemed a waiver of any opposition to the granting of the motion and may result in the imposition of sanctions." Thus, the Court may grant Defendant's unopposed motion for summary judgment if the supporting papers are themselves sufficient to warrant granting the motion and do not on their face reveal a genuine issue of material fact. *See Gill Indus.*, 983 F.2d at 950.

**D. Undisputed Material Facts**

Defendants provide a statement of undisputed material facts. (Doc. No. 90-2). Each listed fact cites to sworn declarations, deposition testimony, and the First Amended Complaint. (*See* generally Doc. No. 90-2). Having reviewed the record, the undersigned finds the following facts to be material and undisputed, unless otherwise noted.

- Defendant Keovilay-See worked as a staff psychologist at Pleasant Valley State Prison ("PVSP") at the time of the incident giving rise to this action. (Doc. No. 90-4 at 1 ¶ 1).
- Her duties involved seeing inmates weekly for confidential one-on-one therapy sessions. (*Id.*).
- Separate from these confidential sessions, Defendant Keovilay-See also facilitated group counseling sessions. (*Id.*).
- The week prior to the October 24, 2017 attack, Rood alleges that Defendant Keovilay-See encouraged other inmates to attack him by stating the "good movies" had been removed from the group because Rood had been accused of indecent exposure. (Doc. No. 18 at 6). At his deposition, Rood specified that Keovilay-See "used words and hand gestures" to blame Plaintiff for the fact that movies were not available in the group session. (Transcript of Deposition of Plaintiff Colton James Rood ("Rood Depo. Tr.") at 25:21-26:10). As discussed below, the undersigned finds this allegation to conjecture.

7

- Keovilay-See attests she never made any comment in the group session that Rood was responsible for the loss of "good movies," nor encourage anyone to attack Plaintiff.  (Doc. No. 90-4 at 3 ¶ 13, 15).
- Rood insists Keovilay-See "did not need to" explicitly state her intent to have inmates attack him because the gestures made it "obvious."  (Rood Depo. Tr. at 27:7–11).  As discussed below, the undersigned finds this conjecture.
- The week the attack occurred was the second or third time that Plaintiff attended the group.  (Doc. No. 90-4 at 2); (Rood Depo. Tr. at 22:2).
- The initial group sessions involve introductions as well as discussions about the rules and procedures the inmates will follow, including discussion of movies available for inmates to watch.  (Doc. No. 90-4 at 2-3 ¶ 10).
- Specific movies are approved by custody officials based on their content.  (*Id*. at 3 ¶ 11).
- Rood alleges that, on October 24, Inmate Mejia was searched and brought to the group session without being scanned by a metal detector.  (Doc. No. 18 at 8).  This is disputed because at his deposition, Rood stated that all inmates get searched in their cell prior to entering group and acknowledged that he was not present when Inmate Mejia was searched on October 24, 2017.  (Rood Depo. Tr. at 54:19–55:3).
- Section 52050.14 of the 2017 Department Operations Manual states that managers and supervisors shall ensure subordinates are aware and comply with search policy, which includes the use of metal detectors wherever feasible.  (Doc. No. 90-5 at 14).
- Ordinarily, a metal detector would be used when an inmate leaves their unit or goes out to the recreation yard.  (Doc. No. 90-6 at 3).
- Even when used, the effectiveness of metal detectors can vary depending on the strength of the battery and the distance the detector is held from the inmate.  (Doc. No. 90-6 at 3).
- Even with a metal detector, it is possible a small razor could evade detection,

8

regardless of the use of a metal detector. (Doc. No. 90-6 at 3).

- After the group session began, Inmate Mejia requested to use the restroom. (Doc. No. 90-4 at 2).
- Defendant Keovilay-See opened the group room door to request assistance from the officer posted outside.[2] (Doc. No. 90-4 at 2).
- A correctional officer then entered the group room to release Inmate Mejia from his padlock. (Doc. No. 90-4 at 2).
- Once released, though still wearing his ankle and waist restraints, Mejia retrieved a razor blade from his person, made his way around to Rood, and began attacking him. (Doc. No. 90-4 at 2).
- Defendant Keovilay-See, witnessing the attack from the door in shock, immediately ran from the room and "screamed" for help. (Doc. No. 90-4 at 2).
- Although Defendant Keovilay-See had an alarm affixed to her clipboard, she had left the clipboard on her desk when she opened the door to retrieve the officer. (Doc. No. 90-4 at 2).
- Rood suffered multiple lacerations to his left cheek because of Mejia's attack. (Doc. No. 90-5 at 4).
- After the attack, Plaintiff told medical personnel, "I don't know why he did that." (Doc. No. 90-5 at 4).
- On September 7, 2018, Inmate Mejia was charged with attempted murder, aggravated mayhem, mayhem via deprivation of member of body, assault with a deadly weapon (razor blade), and custodial possession of a weapon (razor blade). (Doc. No. 90-5 at 6-7).
- Mejia pled no contest on September 9, 2021. (Doc. No. 90-5 at 10-11).
- Colored tags on an inmate's cell reflect that the inmate has been accused of

---

[2] Plaintiff asserts that correctional officer John Doe came into the room unprompted and asked, "if anybody needed to leave." (Doc. No. 18 at 6). However, this discrepancy in the parties' accounts is not material to the claims against Defendants Keovilay-See or Frauenheim.

misconduct.  (Rood Depo. Tr. at 26:13–22.)
- Defendant Keovilay-See personally lacked knowledge of any accusations against Rood.  (Doc. No. 90-4 at 3 ¶ 14).
- Defendant Keovilay-See made no hand gestures toward Rood but acknowledges she "subconsciously" uses her "hands to accentuate statements" but did not intend any gesture as suggesting inmates should attack one another.  (Doc. No. 90-4 at 3 ¶ 15).
- Rood testified that he believes the attack would have occurred even without the alleged conduct by Defendant Keovilay-See, and he believed Inmate Mejia had attacked other inmates.  (Rood Depo. Tr. at 32:7–11).
- Defendant Frauenheim served as the warden of PVSP during the relevant time and is sued in his capacity as the administrator of the Short Term Restrictive Housing (STRH) unit.  (Doc. No. 90-6 at 1).
- As warden, Defendant Frauenheim holds supervisory responsibility for nearly all prison operations, including training.  (Doc. No. 90-6 at 1-2).
- Responsibility for the contents of officer training is shared with non-warden staff, including In-Service Training managers, who ensure that training on relevant protocols is available, and lieutenants, who are primarily responsible for ensuring their permanently assigned staff attend the trainings.  (Doc. No. 90-6 at 2).
- At the time of the incident, Defendant Frauenheim was not aware of any deficiencies in training protocols or any failure to adequately train the officers involved in the incident.  (Doc. No. 90-6 at 2).
- Rood expressed confusion regarding the naming of the STRH administrator in his complaint as Warden Frauenheim and noted he had not had much interaction with Frauenheim.  (Rood Depo. Tr. at 49:8–22).
- Officers at any given institution are required to undergo yearly training in forty-hour blocks to maintain their understanding of procedures covering myriad facets of prison operations.  (Doc. No. 90-6 at 2).

10

- These trainings include topics such as search and escort procedures, inmate relations, responses to emergency, sexual harassment, and others.  (Doc. No. 90-6 at 2).
- Training guidelines are determined at the state level and then implemented at individual CDCR facilities each year.  (Doc. No. 90-6 at 2).
- Paper training materials are distributed only when a new memorandum is issued for immediate release from state-level authorities.  (Doc. No. 90-6 at 2).
- These memoranda do not represent the full breadth of training that correctional officers are expected to complete; rather, they are policy-oriented updates.  (Doc. No. 90-6 at 2).
- When pressed regarding why he believes training materials are not updated or maintained, Rood stated that multiple officers told him they do not receive hands-on training, they only receive paperwork.  (Rood Depo. Tr. at 53:12–23).
- Rood was unable to name any of the officers who allegedly gave him the information about officer trainings.  (Rood Depo. Tr. at 54:1-2); (*See also* Rood Depo. Tr. at 18:14–17).
- At his deposition, Rood claimed that an officer had given the weapon to Inmate Mejia when releasing him to use the restroom at the group room.  (Rood Depo. Tr. at 37:10–17).
- According to Rood, "[y]ou don't get anything like this in there without being given it by the cops" because "you are searched regularly."  (Rood Depo. Tr., at 36:22–25).

**D. The Undisputed Facts Show Defendant Keovilay-See Did Not Act with Deliberate Indifference to a Serious Threat to Plaintiff's Safety**

The undersigned first must consider whether Defendants, as the moving parties, have met their initial burden of showing *prima facie* entitlement to summary judgment on the issue of Plaintiff's failure to protect claim.  *Celotex Corp.*, 477 U.S at 323.  The *prima facie* elements of a failure to protect claim are (1) a serious threat to Plaintiff's safety, and (2) deliberate indifference

11

on the part of a state actor to the threat. *See Farmer*, 511 U.S. at 834.

Here, Plaintiff alleges that, a week before the incident in question, Defendant Keovilay-See, made some unspecified hand gesture toward Plaintiff when noting that certain movies were unavailable due to indecent exposure allegations against an unnamed inmate. (Doc. No. 18 at 6). Plaintiff contends this lone act was blatant encouragement to the other inmates in the group session to attack him. (Rood Trans. at 27:7-11). In other words, Plaintiff alleges that Defendant herself created the threat to Plaintiff's safety that materialized a week later, on October 24. However, Plaintiff himself admitted that the attack by Inmate Mejia "would have happened anyways" without Keovilay-See, and that Mejia had a history of attacking other inmates. (Rood Dep. Trans. 27:3-5, 32:7-9). Plaintiff also reportedly stated to medical personnel after the attack, "I don't know why he did that," in apparent reference to Mejia, which contradicts his current assertions that the attack was obviously prompted by Keovilay-See's "words and hand gestures" a week earlier. (Doc. No. 90-5 at 67); (Doc. No. 40 at 25:21). Meanwhile, Defendant Keovilay-See attested in a sworn declaration that she had no knowledge that Plaintiff had been charged with indecent exposure and made no reference to such a charge in any of the group sessions. (Doc. No. 90-4 at 3 ¶¶ 12-13). Nor was she aware of any similar attacks involving Inmate Mejia prior to the one that occurred on October 24, 2017. (*Id*. at 2 ¶ 8).

The record evidence in this case supports the finding that Defendant Keovilay-See was not aware of an imminent threat against Plaintiff, did not create a threat to Plaintiff's safety, nor was deliberately indifferent to the threat once it materialized. This includes Keovilay-See's sworn declaration and her contemporaneous statement given as part of the incident report, in which she denies knowing about, much less making any statement regarding Plaintiff's charge for indecent exposure. (Doc. No. 90-4 at 2-5). Further, as soon as the threat emerged, she immediately summoned help. In response to Defendants' Motion, Plaintiff did not submit any evidence to refute these claims. The only evidence in the record purporting to dispute Keovilay-See's account is Plaintiff's First Amended Complaint, in which he states that Keovilay-See "encouraged other inmates to attack me by stating that since I had been accused of indecent exposure that all the good movies had been taken from the group and would be there if I was

12

not." (Doc. No. 18 at 6).

A verified complaint may serve as an affidavit for purposes of summary judgment if it is based on personal knowledge and if it sets forth the requisite facts with specificity. *See Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir.2000) (en banc) ("A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence."). However, a self-serving declaration does not always create a genuine issue of material fact for summary judgment: The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence. *See id.; see also F.T.C. v. Publ'g Clearing House, Inc.,* 104 F.3d 1168, 1171 (9th Cir.1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). Here, Plaintiff fails to provide any supporting evidence for his claims as to Defendant Keovilay-See, such as sworn testimony from other witnesses or contemporaneous documents detailing Keovilay-See's actions (e.g. copies of Plaintiff's grievances). Indeed, at his deposition, Plaintiff claims he talked with Mejia after the incident about Mejia's reasons for attacking Plaintiff, but Mejia did not reportedly mention anything regarding Keovilay-See or any alleged comments or hand gestures she made in a group session. (Doc. No. 40 at 30:2-31:16). Nor did Plaintiff provide an affidavit from Mejia attesting to his motive or an affidavit from any other inmate to support his claims regarding Keovilay-See's statements in the earlier group session. Neither in his operative complaint nor at his deposition does Plaintiff provide the date when he was charged with the indecent exposure offense or how Defendant Keovilay-See would have had knowledge of the offense to dispute her sworn statement that she had no knowledge of his indecent exposure charge. Nor does he provide any evidence as to what exactly prompted the attack by inmate Mejia. At most, Plaintiff offers only speculation about what prompted the attack on him by Mejia. Thus, Plaintiff's self-serving claims regarding Defendant Keovilay-See—which incidentally were not present in Plaintiff's initial Complaint, and thus arguably not entitled to the

13

assumption of truth[3]—are inadmissible conclusory statements, rather than detailed facts that can create a genuine issue of material fact. Thus, Defendant Keovilay-See is entitled to summary judgment on Plaintiff's Eighth Amendment failure to protect claim.

### E. The Undisputed Facts Show Defendant Frauenheim Did Not Fail to Train His Subordinates in Violation of the Eighth Amendment

An individual supervisory defendant can be liable for failure to train under the Eighth Amendment when, "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the [supervisor] . . . can reasonably be said to have been deliberately indifferent to the need." *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir.2002) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). The facts must allege that the failure to train was the result of "'a "deliberate" or "conscious" choice' to 'follow a course of action . . . from among various alternatives[.]'" *Clement*, 298 F.3d at 905 (quoting *City of Canton*, 489 U.S. at 389). *See White v. Golden State Eye Center*, 2009 WL 817937, *6 (E.D. Cal. 2009) (identifying elements of a claim for failure to train). Finally, the supervisor's failure to train must result in the violation of the plaintiff's constitutional rights to impose liability on the supervisor. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984).

Here, Rood alleges that Defendant Frauenheim improperly trained his subordinates in search protocol, failed to train subordinates in emergency situations, failed to maintain and update training for officers, and offered insufficient training that was limited to use of training "packets" rather than implementing hands-on training. (Doc. No. 18 at 4). Rood alleges in his operative complaint that the failure to train officers and use of metal detectors resulted in his injuries.[4]

---

[3] Where factual allegations in an amended complaint are inconsistent with facts alleged in a prior complaint, a court need not accept the new allegations as true. *See Azadpour v. Sun Microsys., Inc*., 2007 WL 2141079, at *2 n. 2 (N.D. Cal. July 23, 2007) ("Where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as 'false and sham.'") (citations omitted); see also *Jones v. Bayer Healthcare LLC*, No. 08–2219 SC, 2009 WL 1186891, at *3 (N.D. Cal. May 4, 2009) (striking plaintiff's amended pleading because it was factually inconsistent with plaintiff's previous complaint).

[4] Contradictorily, in his deposition, Plaintiff suggested that an officer who entered the room "slid" Mejia the weapon and was adamant inmates get searched constantly. (Rood Depo. Tr. at 36:20-25).

14

However, Frauenheim, as the warden, operates solely in a supervisory capacity. (Doc. No. 90-6 at 1-2). Though he acted as the administrator for all PVSP operations generally, Frauenheim testified that his role in training officers is "limited to the administrative review of which officers had completed their training." (*Id*. at 2 ¶ 2). Primary responsibility for training officers rests with the In-Service Training managers and individual lieutenants. (*Id*. ¶¶ 2-3). At deposition, Rood offered no evidence linking Frauenheim to any deficiencies in training of officers at PVSP generally or those involved in the incident. Rood also expressed surprise that Warden Frauenheim was identified as the STRH administrator named in his complaint and acknowledged he had not had much interaction with Frauenheim. (Rood Depo. Tr., at 49:8–22).

Rood presents no evidence that "the need for more or better training [of officers regarding search protocols] was obvious" to Frauenheim, thus his pleading lacks a necessary element for a failure to train claim. *See Clement*, 298 F.3d at 905. Plaintiff contends that unspecified "staff has often commented how their 'training' comes in packet form" rather than "hands-on training." (Doc. No. 18 at 4). This vague hearsay statement would not be admissible in court and thus even if it were probative, cannot create a genuine dispute of material fact. *See Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980) (inadmissible hearsay statements cannot be considered in ruling on a summary judgment motion).

Moreover, Defendant Frauenheim's affidavit refutes the vague and unsupported claim that correctional officers do not receive thorough, hands-on, and regular training. Officers are required to undergo yearly training in forty-hour blocks to maintain their understanding of procedures covering myriad facets of prison operations. (Doc. No. 90-6 at 2 ¶ 3). These include trainings on search and escort procedures, inmate relations, responses to emergency, sexual harassment, among many other subjects. (*Id*.). Training guidelines are determined at the state level, and then implemented at individual CDCR facilities each year. (*Id*. ¶ 4). Frauenheim attests that he was unaware of any lack of training of the officers involved in the October 24, 2017 incident prior to the incident; further, he reviewed their training records after the incident which reflected that their training was up to date. (*Id*. at 2-3 ¶ 5).

Plaintiff also contends that certain officers on occasion might not adhere to proper search

15

1 protocols out of laziness, which may have resulted in Inmate Mejia not being searched. (Rood
2 Depo. Trans. 51:19-52:3). However, isolated instances of individual officers failing to follow
3 protocol cannot be attributed to a prison warden under Section 1983. *See Taylor v. List*, 880 F.2d
4 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his
5 subordinates if the supervisor participated in or directed the violations or knew of the violations
6 and failed to act to prevent them. There is no respondeat superior liability under section 1983.")

Finally, Plaintiff alleges that the officer who searched Inmate Mejia did not use a metal detector to search him. (Doc. No. 18 at 8). However, Plaintiff acknowledges he was not present when Mejia was searched. Nor does Plaintiff provide any evidence to support his conclusory claim that use of metal detectors is required when searching inmates. (Rood Depo. Trans. at 51:11-24).

Defendant Frauenheim stated in his declaration that "[h]andheld metal detectors were in use at the time of the incident, but their usage varied depending on where the inmate was being sent. Typically, a metal detector would be used when an inmate leaves their unit or goes out to the recreation yard." (Doc. No. 90-6 at 3 ¶ 6). Even using a metal detector, however, a weakened battery or a small shift in distance can alter whether a narrow razor is detected by the device. (*Id.*). Even assuming the officer who searched Mejia negligently failed to thoroughly search the inmate, Rood does not articulate any facts indicating this was due to inadequate training or inadequate policies around searching inmates; indeed, Plaintiff himself notes that "most of the times" officers search using a metal detector and agreed that "there is a policy that requires them" to do so. (Rood Depo. Trans. 52:1-8). Thus, Plaintiff's own account contradicts his position that the failure to detect a razor blade on Inmate Mejia was the result of any inadequate policy or custom, as opposed to a good-faith mistake or a deviation from policy by a single officer.[5] Accordingly, Plaintiff fails to set forth a genuine dispute of material fact as to whether Defendant Frauenheim failed to train his staff in violation of the Eighth Amendment and Defendant

---

[5] Contradicting his own failure to train theory, Plaintiff speculated during his deposition that Mejia was given a razor by a correctional officer inside the group session room, just moments before the October 24, 2017 assault. (Rood Depo. Tr. at 37:10–17).

Frauenheim is entitled to summary judgment on Plaintiff's Eight Amendment failure to train claim .

### F. Qualified Immunity

In the alternative, the Defendants assert that they are entitled to qualified immunity in this case.  A government official is entitled to qualified immunity under Section 1983 unless (1) the official "violated a federal statutory or constitutional right, and (2) the unlawfulness of his conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).  To demonstrate that a right was "clearly established" requires a showing that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful.  *Wesby*, 138 S. Ct. at 589; *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018). This standard is "demanding" and protects "all but the plainly incompetent or those who knowingly violate the law."  *Wesby*, 138 S. Ct. at 589 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "[A] court typically should identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the constitutional right at issue."  *S.B v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017)).  "Even when no case is 'directly on point,' courts may compare relevant factors to determine whether every reasonable officer should have known the conduct in question was unlawful."  *Anderson v. Virga*, 2018 WL 1556806, *2 (E.D. Cal. Mar. 30, 2018) (citing *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946-47 (9th Cir. 2017).  The plaintiff bears the burden of establishing that the right alleged was clearly established.  *Moran v. Washington*, 47 F.3d 839, 844 (9th Cir. 1998).

Here, the Court found, as discussed above, that Plaintiff did not satisfy the first prong of the qualified immunity analysis as to either Defendant Keovilay-See or Frauenheim.  Even assuming Plaintiff met the first prong as to either Defendant, he fails to meet the second prong because he cannot establish that the unlawfulness of the actions of either Defendant was "clearly established" at the time of the incident.

As to Defendant Keovilay-See's actions, there is no binding authority or robust consensus

of persuasive authority holding that a vague hand gesture toward an inmate when discussing restrictions on the availability of certain movies would constitute an encouragement to assault that inmate, in violation of the inmate's constitutional rights.  It is Plaintiff's burden to establish that such a standard was "clearly established" at the time of the incident, and he provides no argument whatsoever as to this critical question.

Similarly, the court is aware of no legal authority holding that, absent any indication of inadequate training or a pattern of ineffective inmate searches, a warden should be deemed on notice of the potential for harm to inmates from ineffective searches and can be held liable for failure to train.  Plaintiff does not identify any such authority, and thus fails to meet his burden to show that the purported right was "clearly established" at the time of the incident.

## IV. CONCLUSION

Construing the evidence in the light most favorable to Plaintiff, the undersigned finds there is no triable issue as to whether Defendant Keovilay-See failed to protect Plaintiff in violation of the Eighth Amendment and whether Defendant Frauenheim failed to train his subordinates in violation of the Eighth Amendment.  Should the district court be inclined to consider the qualified immunity argument, the undersigned also finds it undisputed that Defendants are entitled to qualified immunity on the Eighth Amendment claims against them, because it was not clearly established at the time of the incident that their actions or inactions violated Plaintiff's constitutional rights.  The undersigned therefore finds that Defendants are entitled to summary judgment.

Accordingly, it is **RECOMMENDED**:

The district court **GRANT** Defendants Keovilay-See and Frauenheim's Motion for Summary Judgment (Doc. No. 90), enter judgment in favor of Defendants, and close this case.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written

objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated: August 16, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE